IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

ELEANOR KELLER, *individually and on behalf of all Heirs-at-Law and/or wrongful death beneficiaries of Gerald Simpson, deceased*, and THE ESTATE OF GERALD SIMPSON, *by and through Glen Simpson, Administrator of the Estate*                                  PLAINTIFFS

V.                                                                              CIVIL ACTION NO.: 1:16-cv-136-SA-DAS

ATTALA COUNTY,
THE CITY OF KOSCIUSKO, MISSISSIPPI,
DARRIN FLEMING,
LIEUTENANT STEVE ALLAN, *in his individual and official capacity*,
OFFICER MAURICE HAWTHORNE, *in his individual and official capacity*                                                                   DEFENDANTS

MEMORANDUM OPINION

Plaintiffs seek redress for certain state law claims involving the death of Gerald Simpson, as well as alleged Fourth Amendment and Fourteenth Amendment violations. Now before the Court are two separate motions—a Motion for Summary Judgment [74], filed by Defendants Attala County and Darrin Fleming and a Motion for Summary Judgment [76], filed by Defendants Steve Allan, Maurice Hawthorne, and the City of Kosciusko.

*Factual and Procedural Background*

On the evening of January 26, 2015, Kosciusko Police Officer Steve Allan responded to a dispatch call regarding Gerald Simpson, who was walking in the middle of the highway in Kosciusko, Mississippi, eating from a box of chicken. By the time Officer Allan arrived on scene, Simpson had walked out of the Kosciusko city limits, so Allan alerted the Attala County Sheriff's Department. While waiting for the County officers to arrive, Officer Allan asked Simpson to step out of the highway and attempted to question him as to his behavior. Officer Allan was unable to

understand Simpson, but Simpson pointed down Highway 12 West. Soon after, Officer Maurice Hawthorne, another Kosciusko city officer arrived on scene, and Officer Allan left the scene to respond to another call.

Simpson began walking on the highway again, and Officer Hawthorne followed him in his patrol vehicle until he was able to convince Simpson to sit in the backseat of his vehicle. Simpson sat in the backseat with his feet on the ground and the door open. Officer Hawthorne remained with Simpson until Attala County Sheriff's Deputy Darrin Fleming arrived, at which point the officers purportedly decided to take Simpson to his residence, though both officers acknowledge that Simpson was still incoherent. Deputy Fleming put Simpson in the backseat of his vehicle and asked him where he resided. Simpson was unable to articulate the location of his residence, but merely pointed west, in the direction of Durant, Mississippi. Fleming did not ask for Simpson's address or identification card. After driving for several miles, Simpson had still not identified his residence. Upon arriving at the county line sometime after 5:00 p.m., Deputy Fleming pulled over and opened the door of his patrol vehicle. Simpson exited the vehicle and continued walking toward Durant on County Road 4101, out of Attala County's jurisdiction. Deputy Fleming testified that there was barely enough daylight to see someone walking, but that it was not dark yet. Later that night, a motorist struck and killed Simpson, who was walking east, back toward Kosciusko.

The officers testified that they were aware that Simpson's behavior was strange, and that Simpson's speaking was incoherent. However, unbeknownst to the officers, Simpson had recently been released from East Mississippi State Hospital after spending twelve years confined there due to certain developmental disabilities, including a speech impediment. That day, he had wandered away from his sister's home, which was approximately seventeen miles from the county line, where Fleming left him.

Pursuant to 42 Section 1983, Plaintiffs bring a substantive due process claim under the Fourteenth Amendment and an improper seizure claim under the Fourth Amendment. Plaintiffs also bring state law claims under the Mississippi Torts Claims Act and the Mississippi Vulnerable Adults Act (MVAA). Defendants argue they are exempt from liability.

*Standard of Review*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

*Analysis and Discussion*

The Plaintiffs' allegations against the City officers and the County deputies are parallel, but the specific facts pertaining to each group of defendants is distinct. Effectively, Plaintiff alleges that all Defendants have a policy of providing unwanted "courtesy rides" to citizens, resulting in unwarranted seizures and known dangers. Plaintiffs argue that this courtesy ride violates the Constitution and results in liability to Defendants under the MTCA.

A. *Qualified Immunity and Deputy Fleming*

Qualified immunity protects government officials from liability for civil damages to the extent that their conduct is objectively reasonable in light of clearly established law. *Crostley v. Lamar Cty., Texas*, 717 F.3d 410, 422-24 (5th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004)). "[T]he usual summary judgment burden of proof is altered in the case of a qualified immunity defense." *Wolfe v. Meziere*, 566 F. App'x 353, 354 (5th Cir. 2014) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005); *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001)). "An officer need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the officer's allegedly wrongful conduct violated clearly established law." *Id*. The plaintiff "cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Id*.

"A plaintiff can overcome a qualified immunity defense by showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Allan v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011); *Harlow*, 457 U.S. at 818, 102 S. Ct. 2727). The second prong is satisfied "only if 'the state of the law at the time

of the incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional.'" *Kimbriel v. City of Greenville, Miss.*, No. 15-60489, 2016 WL 1719108, at *2 (5th Cir. Apr. 28, 2016) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016); *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1866, 188 L. Ed. 895 (2014)). The Court may conduct this two-pronged inquiry in any order. *Crostley*, 717 F.3d at 422-24 (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)).

Plaintiffs allege two Constitutional violations against Deputy Fleming. First, Plaintiffs allege that Deputy Fleming violated Simpson's substantive due process right to be free from state-occasioned bodily harm. Second, Plaintiffs allege that Deputy Fleming improperly seized Simpson by placing Simpson in the back of his patrol car.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. It is by now well established that, while individuals have a substantive due process right to be free from state-occasioned bodily harm, state officials do not, as a general matter, have a constitutional duty of care to protect individuals from injuries caused by themselves or others. *See DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196-97, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989) ("As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.")).

In *DeShaney v. Winnebago*, the Supreme Court noted that this categorical rule is subject to at least one very limited exception. Under this exception, a state may create a "special relationship" with a particular citizen, requiring the state to protect him from harm, "when the State takes a person into its custody and holds him there against his will." *Id.* at 199–200, 109 S. Ct. 998. In

5

such instances, "the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id.* at 200, 109 S. Ct. 998; *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 855–56 (5th Cir. 2012). Thus, an affirmative duty of care and protection may arise under the due process clause when the state, "through the affirmative exercise of its powers, acts to restrain an individual's freedom to act on his own behalf." *Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)). As to such persons,

> "it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*DeShaney*, 489 U.S. at 200, 109 S. Ct. 998. In other words, "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.*

After *DeShaney*, many courts created a second exception, a "state-created danger" exception. "Under the state-created danger theory, a state actor may be liable under Section 1983 if the state actor created or knew of a dangerous situation and affirmatively placed the plaintiff in that situation." *Covington*, 675 F.3d at 865. However, the Fifth Circuit has consistently refused to adopt the state-created danger theory of liability. *Kovacic v. Villarreal*, 628 F.3d 209, 214 (5th Cir. 2010); *see also Bustos v. Martini Club, Inc.*, 599 F.3d 458, 466 (5th Cir. 2010) ("[T]his circuit has not adopted the state-created danger theory"). Based on this authority, numerous courts in this circuit have dismissed claims premised on a state-created danger theory. *See*, *e.g.*, *Bright v. Tunica County School District*, No. 3:16-CV-197-DMB-RP, 2017 WL 3996409, at 7 (N.D. Miss. Sept. 11, 2017) (collecting cases) ("[T]he Court declines to recognize a theory of liability which the

Fifth Circuit has repeatedly declined to adopt"). This Court is bound to apply applicable precedent and find that the "state-created danger" exception is unavailable here.

Indeed, only where a state first creates a special relationship with an individual does the state then have "a constitutional duty to protect that individual from dangers, including, in certain circumstances, private violence," bringing the Court's analysis to the previously discussed first exception. *McClendon*, 305 F.3d 314. "[A] very narrow class of persons who stand in a 'special relationship' with the state enjoys a clearly established constitutional right to some degree of state protection from known threats of harm by private actors." *Walton v. Alexander*, 44 F.3d 1297, 1299 (5th Cir. 1995). This "special relationship" arises when a person is involuntarily confined or otherwise restrained against his will pursuant to a governmental order or by the affirmative exercise of state power. *Id.* The Supreme Court recognized that this special relationship exists when the state takes custody of a prisoner, *Estelle v. Gamble*, 429 U.S. 97, 103–04, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), or involuntarily commits someone to an institution. *Youngberg v. Romeo*, 457 U.S. 307, 315–16, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982). The Fifth Circuit has extended the exception to children in foster care, as well. *Griffith v. Johnston*, 899 F.2d 1427, 1439 (5th Cir. 1990); *Covington*, 675 F.3d at 856. Because Simpson was not incarcerated at the time of his death, and had not been involuntarily committed, his situation does not neatly fit into exceptions made by higher courts. However, like an incarcerated person, when Deputy Fleming placed Simpson in his car, Simpson was unable "by reason of the deprivation of his liberty [to] care for himself," making it only just that the State be required to care for him. *Estelle*, 429 U.S. at 104, 97 S. Ct. 285 (quoting *Spicer v. Williamson,* 191 N.C. 487, 490, 132 S.E. 291, 293 (1926)).

"When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic

7

human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *DeShaney*, 489 U.S. at 198, 109 S. Ct. 998; *See also Estelle*, 429 U.S. at 103–104, 97 S. Ct.; *Youngberg*, 457 U.S., at 315–316, 102 S.Ct. 2452.

Determining whether a "special relationship" existed implicates, at least in part, Plaintiffs' claim that Simpson was seized in violation of the Fourth Amendment. Thus, the Court may not determine whether a special relationship existed without first examining the scope of Defendant Fleming and Attala County's Fourth Amendment liability. In doing so, the Court must consider all the circumstances surrounding the encounter and ask whether the officer's conduct would have caused a reasonable person to believe that he was not free to ignore the police presence and go about his business. *Florida v. Bostick*, 501 U.S. 429, 437, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991); *United States v. Chavez*, 281 F.3d 479, 483–84 (5th Cir. 2002).

"[A]n initially consensual encounter may ripen into a seizure requiring reasonable suspicion or probable cause if an officer, by means of physical force or show of authority, restrains the liberty of a person. *I.N.S. v. Delgado*, 466 210, 215, 104 S. Ct. 1758, 80 L. Ed. 2d 247 (1984); *Chavez*, 281 F.3d at 483. "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980). Such justification may exist in what has been understood by at least one district court in our circuit to be the "community caretaking function" of police officers. *Deyo v. Montgomery Cty. Sheriff's Office*, No. 4:16-CV-2188, 2017 WL 4479960, at 2 (S.D. Tex. May 4, 2017). The "[p]erformance of the community caretaking functions includes stopping or seizing a

citizen for his own safety or for the safety of others; regardless of whether or not the officers suspects criminal activity. *Id.*; *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973). In the course of exercising this non-investigatory function, a police officer may have occasion to seize a person in order to ensure the safety of the public and/or the individual, regardless of any suspected criminal activity. *See, e.g., United States v. Rideau*, 949 F.2d 718, 720 (5th Cir. 1991) (officers stopped defendant for his own safety and the safety of others after observing him standing in the middle of the road at night, dressed in dark clothes, and apparently intoxicated), *vacated on other grounds*, 969 F.2d 1572 (5th Cir. 1992) (en banc) (agreeing with panel on this point).

Therefore, the initial interaction between Simpson and Deputy Fleming may have been reasonable, given the fact that Simpson possibly posed a danger to himself and the community by standing in oncoming traffic. However, courts must "attempt to put ourselves in the shoes of a reasonable police officer as he or she approaches a given situation and assesses the likelihood of danger in a particular context." *Rideau*, 969 F.2d at 1574. There are significant questions of material fact here. Defendants allege that they merely wished to assist Simpson by providing a courtesy ride home. Plaintiffs allege that Deputy Fleming acted on a custom of picking up those viewed as vagrants and dropping them off in neighboring jurisdictions so as to rid Attala County of the problem.

The jury must resolve whether Deputy Fleming was fulfilling his role as a community caretaker and whether that role eventually fell away, leaving only an improper seizure to remain. "The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Neufeld-Neufeld*, 338 F.3d 374, 378 (5th Cir. 2003) (*citing United States*

*v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002)); *see also, Terry v. Ohio*, 392 U.S. 1, 9, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). A reasonable juror may find that after driving Simpson for several miles, Deputy Fleming placed him in an equally, if not more dangerous situation than the one he found him in by leaving him in a rural area at dusk in January—negating Deputy Fleming's argument that he was acting as a community caretaker. Therefore, the Court finds that Plaintiff's Fourth Amendment claim is viable, because it is questionable whether Simpson was improperly seized—whether Deputy Fleming was acting as a community caretaker, whether Simpson ever felt as though he was free to leave, and whether he was capable of giving his consent to be seized in the first place.

Having established that Plaintiff has stated a plausible Fourth Amendment claim, the Court must return to its substantive due process analysis in order to determine whether a special relationship existed so as to create a duty of care. Even if the Officers' seizure of Simpson was reasonable under the "community caretaker" theory, a question of fact would still remain regarding whether Deputy Fleming, by his affirmative act and pursuant to his own will, effectively used his power to force a "special relationship," taking Simpson's liberty under terms that provided no realistic means of terminating the state's custody, and which deprived Simpson of the ability or opportunity to provide for his own care and safety. *Walton*, 44 F.3d 1297. Such an act would transgress the substantive limits on state action set by the Due Process Clause. *DeShaney*, 489 U.S. at 200, 109 S. Ct. 998.

Thus, a question of fact remains as to whether Deputy Fleming owed Simpson a duty of care, and further whether, in breaching that duty, he was deliberately indifferent to Simpson's plight. *See McClendon v. City of Columbia*, 305 F.3d 314, 326 (5th Cir. 2002) ("courts applying both the 'special relationship' exception to the *DeShaney* rule and the 'state-created danger'

exception to the DeShaney rule have generally required plaintiffs to demonstrate . . . that the defendant state official at a minimum acted with deliberate indifference toward the plaintiff"). Finally, there is a question of fact as to whether this breach actually caused Simpson's death.

The second prong of the qualified immunity analysis also requires this court to deny qualified immunity to Defendant Deputy Fleming. The "clearly established" prong does not depend on the existence of a case directly on point. *See, al–Kidd*, 563 U.S. at 741, 131 S. Ct. 2074; *see also, Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377, 129 S. Ct. 2633, 174 L. Ed. 2d 354 (2009) ("To be established clearly, however, there is no need that the 'very action in question [have] previously been held unlawful.'" (quoting *Wilson v. Layne*, 526 U.S. 603, 615, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999)). However, the Fifth Circuit has described substantive due process and Fourth Amendment rights as "clearly established" when the "special relationship" does, in fact, arise. *Walton*, 44 F.3d at 1299. In taking Plaintiffs' allegations as true, that Defendants wanted to remove Simpson from their jurisdiction as a means to rid themselves of a vagrancy problem, it cannot be said that Deputy Fleming did not understand that what he was doing violated the law. *al—Kidd*, 563 U.S. at 741, 131 S. Ct. 2074 ("A Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right") (citing *Anderson v. Creighton*, 483 U.S. 635, 640 107 S. Ct. 3034, 97 L. Ed. 523 (1987)).

A. *Municipal Liability under 42 U.S.C. 1983*

A municipality may only be held liable under § 1983 when the violation of the plaintiff's federally protected right is attributable to the enforcement of a municipal policy or pattern. *Hall v. Robinson*, 618 F. App'x 759, 763 (5th Cir. 2015) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). In other words, Section 1983

municipal liability may not be based on *respondeat superior*. *Zarnow v. Wichita Falls, Tex.*, 614 F.3d 161, 167 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 415, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)).

In order to sustain its claim, the Plaintiffs must demonstrate that Simpson's constitutional rights were violated, and that the violation is attributable to the enforcement of a City policy or practice. *Saenz*, 637 F. App'x. at 831 (citing *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010)). The Plaintiff may accomplish this in a number of ways. Generally, municipal liability may be based upon a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision. *Id.* (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). The Plaintiffs allege that the County had a well-settled custom and practice of providing unwanted "courtesy rides," and transporting individuals to unsafe or dangerous locations to avoid crossing into other jurisdictions, and to avoid vagrancy issues. Furthermore, Plaintiffs argue that such behavior was both deliberately indifferent to Simpson's well-being and in reckless disregard to his safety.

When asked who authorized Simpson's "courtesy ride" Deputy Fleming answered, "I mean, it's something that had been done and, I mean, just something that had been done, just give a courtesy ride." He testified that he knew it had been done previously. Though he stated that there was no written policy for offering courtesy rides, Attala Sheriff Tim Nail testified, "we have been known to give courtesy rides . . . ." He also testified that, even though it was not done in Simpson's case, officers may take individuals to the hospital, or they might take them to the next jurisdiction and arrange for an officer outside of the jurisdiction to pick up the individual.

Plaintiffs have illustrated, in a manner sufficient to survive a summary judgment motion, that Attala County had a well-settled custom of providing "courtesy rides," and by way of Sheriff

Nail's testimony, Plaintiffs have shown that a final policy maker was complicit in making the decisions. However, the Court recognizes that Plaintiffs have not yet shown that such policy was, in the customary case, based on a motive to deprive individuals of their substantive due process, or to violate their Fourth Amendment rights. However, given the nature of the testimony regarding "courtesy rides," and the circumstances that Simpson was dealt by Defendants, the Court must allow a jury to resolve this issue of material fact.

   B.  *City Liability, Officer Hawthorne and Lieutenant Allan*

Plaintiffs bring parallel claims against the City of Kosciusko, as well as Officer Hawthorne and Lieutenant Allan in their individual capacities. However, the City Officers' involvement in Simpson's death is much different from that of Deputy Fleming. The first to arrive, Officer Allan, realized that Simpson had wandered out of Kosciusko's jurisdiction. Therefore, he alerted the appropriate agency, the Attala County Sheriff's Department. Officer Allan left soon after Officer Hawthorne, another City officer, arrived. His involvement in the events was extremely brief. Then, Officer Hawthorne remained with Simpson merely to wait until Attala County Officers arrived.

Plaintiffs have failed to bring evidence that the Kosciusko officers' actions constitute an unreasonable seizure. According to the record, the Kosciusko officers merely retrieved Simpson from the road and attempted to shadow him until the proper authorities arrived. "The police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *Neufeld-Neufeld*, 338 F.3d at 378. Even if the City officers did "seize" Plaintiff, it was clearly a reasonable seizure, performed pursuant to the community caregiver function. *Rideau*, 949 F.2d at 720. *See also United States v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993); *Terry*, 392 U.S. at 20, 88 S. Ct. 1868 ("In determining whether such a seizure violates an individual's Fourth Amendment rights, the critical inquiry is whether the officers possessed "specific and articulable

facts which . . . reasonably warrant[ed][an] intrusion into the individual's liberty"). Furthermore, Plaintiff has not shown that it was clearly established that retrieving a man from the middle of the road and attempting to persuade him to remain out of the road is a constitutional violation. Therefore, Plaintiffs' Fourth Amendment claim against the City officers must fail.

In addition, no special relationship was created between the City officers and Simpson, because the City officers did not involuntarily confine or otherwise restrain Simpson against his will through the affirmative exercise of state power. Simpson's feet remained on the ground during their interaction. Furthermore, Plaintiffs have not brought ample evidence that the City Officers' actions actually caused Simpson's demise or were unreasonable. Necessarily, there is no substantive due process violation as to the City Officers, either, and Defendants Officer Hawthorne and Lieutenant Allan are entitled to qualified immunity.

Finally, as Plaintiffs have failed to show that Simpson's Constitutional rights were violated by the City, Plaintiffs' municipal claims against the City must also fail. *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997) ("Without an underlying constitutional violation, an essential element of municipal liability is missing"); *see also Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992) ("[P]roper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation."). Thus, even if the City had a custom of providing courtesy rides, there can be no Section 1983 liability, because the City did not violate Simpson's constitutional rights.

C. *State Law Claims*

In addition to constitutional claims, Plaintiffs bring claims under the Mississippi Torts Claims Act (MTCA). The MTCA provides the exclusive remedy for tort actions brought against a governmental entity or its employees. MISS. CODE ANN. § 11–46–7(1). Although the MTCA

14

waives sovereign immunity for tort actions, it also prescribes certain exemptions from this statutory waiver under which a governmental entity retains its sovereign immunity. For example, the police and fire protection exemption is inapplicable if acts or omissions are in "reckless disregard" for the safety and well-being of one not engaged in criminal acts. MISS. CODE ANN. § 11-46-9(1)(c). Thus, to be entitled to immunity, the officer must not have acted with reckless disregard for the safety of others. Reckless disregard is more than mere negligence, but less than an intentional act. *City of Jackson v. Brister*, 838 So. 2d 274, 281 (Miss. 2003).

The asserted underlying tort in this wrongful death action is that Defendants violated the Mississippi Vulnerable Adults Act. MISS. CODE ANN. § 43–47–1. The Mississippi Vulnerable Person's Act was codified to provide "protective services for vulnerable persons who are abused, neglected, or exploited." *Id*. That statute mandates criminal penalties for persons who abuse, neglect or exploit any vulnerable person. MISS. CODE ANN. § 43–47–19. Though it is possible that Deputy Fleming displayed reckless disregard for Simpson's safety, Plaintiffs have failed to present the Court with any viable private state law cause of action against Defendants, beyond that which would be subsumed under Plaintiffs' constitutional claims. Plaintiffs have failed to show that the MVAA provides for a private right of action at all. *See Allstate Life Ins. Co. v. Parnell*, 292 F. App'x 264 (5th Cir. 2008) ("After examining the MVAA as a whole, we find no basis from which we can infer a legislative intent to create a private cause of action for violations").

To the extent that Plaintiffs argue that any other state law claims should survive beyond summary adjudication, their allegations have not been briefed or explained. "Rule 56 does not impose upon the district court a duty to sift through the record to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). Therefore, Plaintiffs' state law claims are dismissed.

*Conclusion*

Plaintiffs have created a genuine issue of material fact regarding their Fourth Amendment and substantive due process claims against Defendants Deputy Fleming and Attala County, but have failed to assert a private cause of action under state law. Therefore, Defendants Fleming and Attala County's Motion for Summary Judgment [74] is GRANTED IN PART and DENIED IN PART. However, Plaintiffs have failed to bring forth evidence to overcome Defendants Allan and Hawthorne's right to qualified immunity. Futhermore, Plaintiffs have failed to show that Defendant City of Kosciusko instituted a policy or custom that caused Simpson's injuries. Therefore, Defendants City of Kosciusko, Hawthorne, and Allan's Motion for Summary Judgment [76] is GRANTED. Plaintiffs' state law claims against all Defendants are dismissed, and Defendant Allan, Hawthorne and City of Kosciusko are dismissed, as well.

SO ORDERED this the 29th day of January, 2018.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE